FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 10, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TEMIRA PAULSON and MATTHEW PAULSON,

              Plaintiffs,

              v.

HIGHSTREET INSURANCE PARTNERS, INC.; SIMMONS AGENCY d/b/a/ Highstreet Insurance & Financial Services West

              Defendant.

No. 2:25-cv-00061-RLP

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Partial Summary Judgment, ECF No. 35. Plaintiffs Temira and Matthew Paulson are represented by Katie Daniel and Matthew Crotty. Defendants Highstreet Insurance Partners Inc. and Simmons Agency are represented by Bryan Patrick O'Connor, Lesie Boro and Joshua Tinajero. This matter was submitted to the Court without oral argument.

Defendants request partial summary judgment as to the Paulsons' discrimination claims brought under the Americans with Disabilities Act (ADA)

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

and Washington Law Against Discrimination (WLAD), including claims for failure to accommodate, disability discrimination, retaliation, associational discrimination, and ADA interference (claims 1–9). Defendants also move for summary judgment on the Paulsons' claim for retaliation in violation of public policy (claim 13). For the reasons discussed below, the Court grants the motion.

BACKGROUND

This lawsuit concerns Defendants' October 2024 termination of the Paulsons' employment during their approved medical leave. Defendants employed the Paulsons in April 2022. ECF No. 42, ¶¶1-2. Mr. Paulson worked in a sales capacity, in which he sold and bound policies from insurance providers. *Id*. At the time of his termination Liberty Mutual/Safeco[1] policies accounted for approximately two thirds of Mr. Paulson's book of business. ECF No. 38, ¶1-30.

Ms. Paulson was employed as a customer service representative. ECF No. 42, ¶¶1-2. Originally, Ms. Paulson was expected to provide services to the Spokane branch office[2] and other locations. ECF No. 36, Exh. B at 60:22-61-1. However, Ms. Paulson complained about the multi-office support expectations. ECF No. 38,

---

[1] Although not clarified by the parties, Safeco appears to be a division of Liberty Mutual.

[2] The Spokane branch office consisted only of Mr. Paulson's book of business. *See* ECF No. 38, ¶12.

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 2

¶32. Highstreet assessed that Mr. Paulson's book of business was insufficient to support Ms. Paulson working full-time for just the Spokane branch. *Id*. Thus, in October 2023, Highstreet reduced her hours to that of a part-time employee. ECF No. 36, Exh. K.

The Paulsons allege Ms. Paulson continued working 40-hour weeks despite being paid for a part-time position. Mr. Paulson testified that in the summer of 2024[3], while at a golfing event, he told Highstreet managers that Ms. Paulson had "blown through her 20 hours and is working for free the remainder of the week." ECF Nos. 1, ¶23; 36, Exh. A at 140:1-11. Mr. Paulson alleges that a few days later, he was informed by one of the mangers, Jon Patterson, that Ms. Paulson would be reinstated to a full-time position. ECF No. 36, Exh. M.

---

[3] Mr. Paulson states that this golfing event occurred in the summer of either 2023 or 2024. ECF No. 36, Exh. A at 140:1-11. The Court infers from the fact that Ms. Paulson was on full-time status through the summer of 2023 that the golfing event took place in 2024.

Mr. Paulson also stated that he complained in the summer of 2022. Again, because Ms. Paulson was transferred to a part-time position in October 2023, the Court assumes the 2022 complaints concerned the multi-office expectations that lead Ms. Paulson to being placed on part-time status.

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

The record establishes that on September 19, 2024, Defendants approved the Paulsons' request to take medical and caretaker starting October 7, 2024, when Ms. Paulson was scheduled to be treated for breast cancer. ECF No. 37, Exh. 11.

On September 25, 2024, Trisha Nelson, Vice President for Liberty Mutual, called Trevor Campbell, West Region Market Director for Highstreet. ECF No. 36, Exh. F. 68:3-70:25; 85:12-87:11. According to Defendants, Ms. Paulson informed Mr. Campbell Liberty Mutual was terminating the Paulsons' binding authority. ECF Nos. 36, Exh. F, 68:3—70:25; 51, Exh. B, 38 at 21-24. Mr. Campbell testified that he learned the Paulsons were on protected leave soon after this phone call. ECF No. 43, Exh. A at 125:10-20.

On October 17, 2024, at approximately 7:00 p.m., Ms. Nelson sent Ms. Paulson an email with the subject line, "Discussion on Safeco and Liberty Mutual Small Commercial Performance." ECF No. 43, Exh. A at 147. Ms. Nelson received an automatic reply from Ms. Paulson, stating she and Mr. Paulson were out on "medical leave." *Id*. At 7:03 p.m., Ms. Nelson forwarded the email chain to Mr. Campbell and a Safeco territory manager named Randy Coston. Along with forwarding the out-of-office email, Ms. Nelson sent the following message, "Hey, I sent this to Temira as Randy suggested. Just received this out of office. Do either of you know what is up with Temira? (or does someone else within High Street?)" ECF No. 43, Exh. A at 147.

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 4

On October 18, 2024, Mr. Campbell informed Highstreet's Human Resources employee, Debra Kelmer, that Liberty Mutual had notified them the Plaintiffs' binding authority was being removed. ECF No. 36, Exh. I at 39:14-21. That afternoon, Ms. Kilmer emailed Mr. Paulson informing him that he was being placed on administrative leave after learning Liberty Mutual/Safeco had suspended his binding authority. ECF Nos. 36, Exh. R; 43, Exh E at 38:24-39:24. Ms. Paulson received the same letter that evening. ECF No. 36, Exh. Q.

Ms. Nelson confirmed on October 21, 2024, via email that their authority to bind Liberty Mutual had been rescinded. ECF No. 36, Exh. P. On October 23, 2024, Highstreet terminated the Paulson's employment. ECF No. 36, Exh. A, 27:20-22.

In the month following his termination, Mr. Paulson conducted his own investigation into his and Ms. Paulson's termination. ECF Nos. 36, Exh. M; 37, Exh. 14. On November 20, 2024, Mr. Paulson called Liberty Mutual's License and Compliance Department at (603) 749-2600. ECF No. 46 at ⁋19. He talked to a representative who has been identified as Kelly Robidas. ECF No. 43, Exh. E at 16. Mr. Paulson asked Ms. Robidas why Liberty Mutual terminated his appointment. *Id*. Ms. Robidas responded, "when I'm looking at my information … the reason why they terminated the appointment, is because the agency you were appointed through—Highstreet Insurance—requested that the appointment be

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 5

terminated." ECF No. 46 at ⁋ 19.

The Paulsons filed their Complaint in Spokane County Superior Court, alleging 15 causes of action. They bring claims for failure to accommodate Ms. Paulson under ADA and WLAD (claims 1 & 2); disability discrimination of Ms. Paulson under ADA and WLAD (claims 3 & 4); retaliation against Ms. Paulson under the ADA and WLAD (claims 5 & 6); associational discrimination of Mr. Paulson under the ADA (claims 7); interference with Mr. and Ms. Paulsons leave under the ADA (claims 8 & 9); violation of Wage Payment Act, failure to pay minimum wage and willful withholding of wages as to Ms. Paulson (claims 10, 11 & 12); retaliation against Mr. Paulson for complaining for unpaid wages (claim 13); and failure to pay wages owed at termination and willful withholding of wages as to Mr. Paulson (claims 14 & 15). Defendants removed the case to federal court on September 16, 2025. They now request summary judgment on claims 1-9 and 13.

LEGAL STANDARD

a. *Summary Judgment Standard*

Summary judgment may be granted to a moving party who demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed." FRCP 56(e)(2).

A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson.*, 477 U.S. at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable trier-of-fact could find in favor of the non-moving party. *Id*. "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks and alterations omitted). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89, 110 S.Ct. 3177 (1990).

//

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 7

b. _McDonnel Douglas_ Framework

In the context of the ADA and the Washington corollary, the WLAD, courts use the _McDonnell Douglas_ burden-shifting framework to assess discrimination claims. _See McDonnell Douglas Corp. v. Green_, 411 U.S. 792, 93 S.Ct 1817 (1973); _Houserman v. Comtech TeleCommunications Corp._, 2020 WL 7773417 at *7 (W.D. Wash. Dec. 30, 2020) (applying standard to ADA and WLAD discrimination claims). Under this framework, a plaintiff must first establish a _prima facie_ case for disability discrimination. If this is met, the burden shifts to the employer to provide a legitimate non-discriminatory reason for the adverse employment action. _Id_. If the employer presents a non-discriminatory reason, then the plaintiff carries the ultimate burden of producing non-speculative evidence that the employer's stated is pretextual. A plaintiff challenging an employer's stated reason must do more than simply deny the credibility of the defendant's explanation. _See Schuler v. Chronicle Broadcasting Co._, 793 F.2d 1010, 1011 (9th Cir.1986). Instead, the plaintiff must produce "specific, substantial evidence of pretext." _Steckl v. Motorola, Inc._, 703 F.2d 392, 393 (9th Cir. 1983).

DISCUSSION

The Paulsons' claims arise from two events: their taking of leave and their termination. The Court addresses each in event in turn.

1. _Claims arising out of requested accommodations_

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 8

Defendants request summary judgment on the Paulsons' claims for ADA interference and failure to accommodate under the ADA and WLAD.

As an initial matter, the Paulsons' do not identify the accommodation Defendants failed to provide or the right they interfered with. The only basis for these claims apparent in the record is the Paulsons' request for protected medical leave. That request was granted. The Paulsons took leave starting on October 7, 2024. Because the Paulsons were provided leave, there is no *prima facie* claim that Defendants failed to accommodate them or interfered with any ADA protected right. 42 U.S.C.A. § 12203(b) (The ADA makes it unlawful to "interfere" with any individual in the exercise or enjoyment of "any right granted or protected by this chapter."); *Poe v. Waste Connections US, Inc.*, 371 F. Supp. 3d 901, 910 (W.D. Wash. 2019) (ADA and WLAD require plaintiff  to show she was denied a reasonable accommodation).

Summary judgment is therefore granted as to the Paulson's claims for interference and failure to accommodate (claims 1, 2, 8 and 9).

### 2. *Claims arising out of the Paulsons' termination*

The next category of claims arise out of the Paulsons' termination. Specifically, the Paulsons bring claims for disability discrimination under the ADA and WLAD (claims 3 & 4); retaliation under the ADA and WLAD (claims 5 & 6); associational discrimination under the ADA (claim 7) and retaliation in violation of

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 9

public policy (claim 13). Defendants contend that because the Paulsons were terminated due to their unprofitable results, the Paulsons cannot establish a causal link between their protected status and their termination. The Court agrees.

a. Claims Under ADA & WLAD

All ADA and WLAD claims share the same factual basis. The Paulsons allege that Ms. Paulson was discriminated and retaliated against when she was terminated after taking medical leave (claims 3-6), and Mr. Paulson was discriminated against when he was terminated after taking caretaker leave (claim 7).

Because Defendants concede that Ms. Paulson qualified as a person with a disability and that the Paulsons suffered an adverse employment action, the only issue necessary to resolve these claims is the issue of causation, i.e., whether plaintiffs were terminated for taking protected leave or for their unprofitable results. The Paulsons argue that circumstantial evidence establishes a reasonable inference of discrimination. The Court is not persuaded. The Paulsons' theory depends on speculative what-ifs rather than evidence of causation.

To show the necessary causal link for the federal claims, the Paulsons must demonstrate that taking leave was the "but-for cause" of their termination. *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (retaliation); *Murray v. Mayo Clinic,* 934 F.3d 1101 (9th Cir. 2019)

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 10

(discrimination). For their WLAD retaliation claims, the Paulsons need only prove that her statutorily protected activity was a "substantial factor" in Defendants' adverse employment decision. *See Francom v. Costco Wholesale Corp.*, 98 Wash.App. 845, 991 P.2d 1182, 1191 (2000).

A plaintiff may establish causation with "circumstantial evidence, such as the employer's knowledge that [she] engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). However, "an employer's decision on a course of action made prior to learning of the employee's protected activity does not give rise to an inference of causation." *Id*. at 1375. Furthermore, if an employer provides a nondiscriminatory reason for its employment decision, the plaintiff must produce "specific, substantial evidence of pretext." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 939 (9th Cir. 1983). A plaintiff cannot overcome summary judgment simply by "deny[ing] the credibility of the defendant's witnesses." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994) (quotations and citations omitted).

Here, even if the Paulsons can be said to have made a *prima facie* case of discrimination, they have not met their burden of avoiding summary judgment. It is undisputed that Highstreet's stated justification for terminating the Paulsons was

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 11

Ms. Nelson's decision to revoke the Paulsons' authority to sell Liberty Mutual/Safeco policies. Yet Ms. Nelson did not first learn of the Paulsons' leave status until the evening of October 17, 2024, when she received the out-of-office reply from Ms. Paulson. ECF No. 43, Exh. A at 147. The subject line of the email sent from Ms. Nelson to Ms. Paulson on October 17 indicated she wanted to discuss commercial performance issues involving Safeco and Liberty Mutual. *Id*. In other words, there is documentary proof that Ms. Nelson wanted to talk to Ms. Paulson about sales performance concerns *before* she ever knew about the Paulsons' leave status. Indeed, the record includes information that Liberty Mutual began investigating the Paulsons' sales activities in early 2024, before Mr. or Ms. Paulson took medical leave. *See, e.g.,* ECF Nos. 36, Exh. N; 37, Exh. A at 93:24-94:6. This circumstantial evidence corroborates Ms. Nelson's testimony that she made the decision to terminate the Paulsons' sales authority independent of any knowledge about their medical leave.

The only specific evidence that could potentially support a claim of pretext is Mr. Paulson's call with Ms. Robidas. But the Court has not been presented with any direct statements by Ms. Robidas. She has never been deposed and has not submitted a declaration. Given this circumstance, statements attributed to Ms. Robidas are rank hearsay. The Paulsons imply that Ms. Robidas's statement falls outside the hearsay definition because it qualifies as an admission by a party

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 12

opponent. *See* FRE 801(d)(2). But Ms. Robidas worked for Liberty Mutual, not Highstreet. Liberty Mutual is not a party opponent in this case. Even if Ms. Robidas was authorized to speak on behalf of Liberty Mutual as to the reasons for its cancellation of the Paulsons' sales authority,[4] any such statements are not admissible against Highstreet.

---

[4] The current record does not support this inference. The record contains no information about Ms. Robidas's job title or responsibilities. Nor are there any business records from Liberty Mutual verifying the information purportedly relayed to Mr. Paulson by Ms. Robidas. In fact, there is not even an explanation of what sort of database Ms. Robidas might have been reading from. Without more information, Mr. Paulson's self-serving recollection of what was told to him by Ms. Robidas appears insufficient to qualify as a statement made by Liberty Mutual. *See, e.g., Carden v. Westinghouse Elec. Corp*, 850 F.2d 996, 1002 (3d Cir. 996) (statement by company's agent that an unidentified person harbored discriminatory intent is inadmissible double hearsay); *Hill v. Spiegel*, 708 F.2d 233, 237 (6th Cir. 1983) (statements by unauthorized employees not admissible as statement on behalf of employer regarding termination); *Harrison v. Formosa Plastics Corp. Texas*, 776 F.Supp.2d 433, 441 (S.D. Tex. 2011) (FRE 801(d)(2) requires evidence that an employee is authorized to speak on behalf of the party opponent).

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 13

Apart from Ms. Robidas's purported statement, the Paulsons' arguments against Highstreet's nondiscriminatory justification are nothing more than speculation. The Paulsons suggest Mr. Campbell and Ms. Nelson had some sort of illicit relationship and were colluding against them. ECF No. 41 at 6. They also criticize Ms. Kilmer's handling of the termination process. *Id*. at 8. But the Paulsons point to no concrete evidence of collusion—again, the undisputed evidence is Ms. Nelson did not learn of the Paulsons' protected status until after she already decided to terminate the Paulsons' sales authority. ECF No. 43, Exh. A at 147. And any missteps that may have been made by Ms. Kilmer occurred after Ms. Nelson's termination decision.

The Paulsons also complain that, even if Liberty Mutual validly terminated their sales authority, Highstreet should have explored alternatives to termination of employment. ECF No. 41 at 9. This complaint has no bearing on the Paulsons' legal claims. As Highstreet points out, Liberty Mutual/Safeco provided the majority of the Paulsons' sales business. Thus, Highstreet had a plausible economic reason for deciding that they did not want their Spokane office run by a team who could not sell Liberty Mutual policies. No further nondiscriminary justification is required. Furthermore, given the only individual Ms. Paulson supported was Mr. Paulson, it was reasonable and not discriminatory for Highstreet to determine that if Mr. Paulson could not work for Highstreet, Ms. Paulson would

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 14

not have an available position. The Paulsons cite no authority for their suggestion that Highstreet can be held liable for discrimination because they did not explore alternative work assignments for the Paulsons.

The Court thus find the Paulsons have failed to present sufficient evidence to establish they were terminated for any reason other than the profitability of the Spokane business.

b. Retaliation in violation of public policy

The Paulsons public policy retaliation claim fares no better. The Paulsons offer no explanation for why they believe their termination was connected to his wage complaints, which he lodged months before he was let go. *See Korslund v. DynCorp Tri-Cities Services, Inc.,* 125 P.3d 119, 156 Wash.2d 168 (2005) (plaintiff must prove that the conduct associated with the public policy was a "significant factor" in the decision to terminate the worker). If anything, the timeline cuts against them. Defendants' responded to Mr. Paulson's complaints not with termination, but by acknowledging them and agreeing to return Ms. Paulson to full-time status. ECF No. 38, ¶¶44-45. The termination came later, without any apparent link to the prior reports. Notably, there is no allegation or suggestion in the record that Mr. Campbell was privy to these reports. Accordingly, the Court grants summary judgment as to this claim.

//

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 15

CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment, **ECF No. 35,** is GRANTED. Claims 1 through 9 and 13 of the Paulsons' complaint, ECF No. 1-1, are hereby DISMISSED.

The Clerk shall enter this Order and forward copies to counsel

**DATED** April 10, 2026.

REBECCA L. PENNELL
United States District Judge

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 16